IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMA MILLER, | : | |
|     Plaintiff | : | No. 1:10-cv-2479 |
| | : | |
| v. | : | |
| | : | (Chief Judge Kane) |
| TYCO ELECTRONICS, LTD., | : | |
|     Defendant | : | |

### MEMORANDUM

Currently pending before the Court is Defendant Tyco Electronics, Ltd.'s motion for summary judgment. (Doc. No. 39.) The matter is ripe for disposition, and, for the reasons stated more fully herein, the Court will deny the motion.

I.    BACKGROUND[1]

Plaintiff Emma Miller worked in various manufacturing and assembly capacities on production lines while employed by Defendant Tyco until she was terminated in March 2009. (Doc. Nos. 41, 47 ¶ 2.) From 1999 until late 2007, Plaintiff worked in a large facility in East Berlin, Pennsylvania; when the East Berlin facility closed in 2007, she was transferred to a plant in Harrisburg. (Id. ¶ 3.) At the Harrisburg plant, Plaintiff was assigned to work on a "multi-gig" assembly line machine. (Id. ¶ 9.) While Plaintiff had worked on the multi-gig machine at the East Berlin plant, her responsibilities increased at the Harrisburg plant, where she was required to run the entire assembly line, repair machines, and perform set-up duties on the machines. (Id. ¶¶ 11, 13.) While Plaintiff asserts that she should have received more training, she claims that she was able to perform all of the duties associated with her position. (Id. ¶ 16.)

---

[1] The following facts of record are undisputed unless otherwise noted.

1

In November 2008, Plaintiff's supervisor James Smith prepared performance reviews for all of his direct reports, including Plaintiff. (Id. ¶ 18.) Employees received a performance-based ranking score of either one (below expectations), two (meets expectations), or three (exceeds expectations). (Id.) Mr. Smith gave Plaintiff a score of one. (Id. ¶ 20.) While no male employees were given a score of one, some female employees were given scores higher than their male counterparts. In his written review of Plaintiff, Mr. Smith wrote that Plaintiff's demonstrated skills did not measure up to the descriptions of her job classification. (Id. ¶ 22.)

In December 2008, Plaintiff complained to Tyco's human resources department, claiming that Mr. Smith discriminated against her and harassed her based on her Filipino national origin and her gender. (Id. ¶ 24.) Specifically, Plaintiff claimed that Mr. Smith constantly reprimanded her about her jewelry and about her hair not being pulled back, that she was not treated professionally, and that she did not get the same help and training as her white male coworkers. (Doc. No. 39-11.) Upon investigation of Plaintiff's claims, Tyco's human resources department concluded that Plaintiff had not suffered any illegal discrimination or harassment; however, Plaintiff disagrees with this conclusion. (Doc. Nos. 41, 47 ¶ 27.) In her deposition in this case, Plaintiff provided more detailed allegations of discrimination. (Doc. No. 46-1.) Notably, Plaintiff stated that Mr. Smith told her that no woman should be doing the type of work that she was performing, screamed at her for wearing jewelry, called her dumb, tried to flick her in the head, laughed at her Filipino accent, and called her a dumb Filipino. (Id. at 10-14, 18, 21-22.)

In March 2009, Tyco engaged in a round of layoffs that affected the Harrisburg plant. (Doc. Nos. 41, 37 ¶ 32.) Tyco used its standard reduction-in-force selection criteria to determine individuals for layoff, placing individuals on the layoff list if they received a performance-based

ranking of one on their last performance review or if they had written disciplinary action in their record. (Id. ¶ 34.) Because Plaintiff had received a performance-based ranking of one on her last performance review, she was terminated on March 4, 2009. (Id. ¶ 37.)

Plaintiff initiated this action by filing a complaint on December 3, 2010, alleging that she was terminated from her position at Tyco for improper reasons. (Doc. No. 1.) She filed an amended complaint against Tyco on January 17, 2012, raising claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act (PHRA), alleging that she was terminated based on, inter alia, her gender, national origin, and race. (Doc. No. 4.) On July 11, 2012, Plaintiff filed a stipulation amending her complaint, dropping all of her claims except for a Title VII claim and a PHRA claim based on gender and national origin. (Doc. No. 36.) Following discovery, Defendant filed the instant motion for summary judgment on July 20, 2012. (Doc. No. 39.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

### III. DISCUSSION

Tyco moves for summary judgment, arguing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. (Doc. No. 39.) In response, Plaintiff

argues that she has produced sufficient facts to prove a prima facie case of national and gender discrimination, and that she has established pretext. (Doc. No. 46.)

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PHRA likewise prohibits discrimination in employment on the basis of, inter alia, one's gender and national origin. 43 Pa. Cons. Stat. § 951 et seq. To prevail on a claim of discrimination under Title VII or the PHRA, a plaintiff must satisfy the three-step burden-shifting inquiry under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Atkinson v. LaFayette Coll., 460 F.3d 447, 454 (3d Cir. 2006).

> Briefly summarized, the McDonnell Douglas analysis proceeds in three stages. First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (internal citation omitted). To establish a prima facie case, a plaintiff must establish: (1) that she is a member of a protected class; (2) that she was qualified for the position she held or sought; (3) that she suffered an adverse employment action; and (4) that similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination. Id. at 410-411.

Then, if the defendant articulates a legitimate, non-discriminatory reason for its action, the burden is on the plaintiff to identify "sufficient evidence from which a jury could conclude that the purported reasons for [the action] were in actuality a pretext for intentional . . . discrimination." Id. at 412. A plaintiff may show such pretext by either: (1) identifying evidence that would allow a reasonable factfinder to "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action;" or (2) by casting sufficient doubt upon the legitimate reasons proffered by the defendant so that a reasonable factfinder could conclude that the reason was a post hoc fabrication or else did not actually motivate the employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). It is not enough for a plaintiff to demonstrate that an employer's decision was "wrong or mistaken." Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

In some cases, an employer can be held "liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 131 S.Ct. 1186, 1190 (2011). The United States Supreme Court recently recognized this "cat's paw" theory of liability, explaining the origin of the phrase as follows:

> The term "cat's paw" derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by Posner in 1990. In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. A coda to the fable (relevant only marginally, if at all, to employment law) observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward.

Id. at 1190 n.1 (internal citations omitted). In evaluating a claim of discrimination under the Uniformed Services Employment and Reemployment Act (USERRA), noting that statute's

similarity to Title VII, the Supreme Court explained that when an agent of an employer makes the ultimate decision to terminate an employee on the basis of performance assessments by other supervisors, the employer should not be shielded from the "discriminatory acts and recommendations of supervisors that were <u>designed and intended</u> to produce the adverse action." <u>Id.</u> at 1193 (emphasis in original). Thus, the Court held that "if a supervisor performs an act motivated by antimilitary animus that is <u>intended</u> by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." <u>Id.</u> at 1194. This rule applies not only to USERRA claims, but also to Title VII discrimination claims. <u>See</u> <u>McKenna v. City of Phila.</u>, 649 F.3d 171 (3d Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1918 (2012).

Defendant argues that Plaintiff cannot establish the necessary elements to prevail on either her national origin discrimination claim or her gender discrimination claim. (Doc. No. 40 at 24.) Plaintiff asserts that Defendant is not entitled to summary judgment, as she has produced sufficient facts to support an inference of discrimination. (Doc. No. 46 at 12.) The Court will separately address Plaintiff's national origin discrimination claim and her gender discrimination claim.

  A.  **National Origin Discrimination**

With respect to Plaintiff's national origin claim, Defendant argues that Plaintiff cannot prove the fourth factor of her required <u>prima facie</u> case by showing that similarly situated non-Filipino employees were saved from layoff under similar circumstances or that the circumstances surrounding the termination decision give rise to an inference of discrimination. (Doc. No. 40 at 24.) In response, Plaintiff asserts that similarly situated non-Filipinos were treated more

favorably than her, and that she has produced sufficient evidence from which a reasonable factfinder could draw an inference of national origin discrimination. (Doc. No. 46 at 12.)

        1.      **Prima Facie Case**

First, the Court finds that Plaintiff has not shown that similarly situated persons who were not members of her protected class were treated more favorably. Plaintiff argues that she has made such a showing because she was the only Filipino employee under Mr. Smith's supervision, and she was the only employee whom Mr. Smith gave a performance-based ranking of one. However, Plaintiff has not shown that any of the other employees were "similarly situated," which means similar in all relevant aspects. See Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 223 (3d Cir. 2009) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). In assessing whether individuals are similarly situated, courts look to whether the employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them." McCullers v. Napolitano, 427 F. App'x 190, 195 (3d Cir. 2011) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). Plaintiff has pointed to no cognizable evidence indicating that other employees performed their job duties at the same level as she yet received a higher performance-based ranking than she. Plaintiff's argument that other employees who held the position of Operations Associate II, the same position that she held, were ranked higher than she is not sufficient to satisfy the Court that "similarly situated" employees were treated better than she, absent some evidence that those employees performed their duties with the same level of competency as Plaintiff.

However, Plaintiff also argues that she has produced sufficient facts to give rise to an

inference of discrimination. Specifically, Plaintiff argues even though she was terminated due to her low performance-based ranking, her low score resulted from Mr. Smith's discriminatory animus toward her Filipino origin, evidenced by the fact that he teased her about her accent, told her she needs to go back to school, called her dumb while flicking his fingers at her head, and called her a dumb Filipino around the same time that he completed her performance evaluation. (Id. at 13.)

Defendant argues that these statements are insufficient to create an inference of discrimination, directing the Court to the Third Circuit's instruction that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given weight, particularly if they were made temporally remote from the date of the decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). However, Plaintiff has presented evidence that Mr. Smith called her a "dumb Filipino" in the months prior to his issuance of an unfavorable performance review for Plaintiff. This is in stark contrast to the statement at issue in Ezold, upon which Defendant relies, which was made approximately five years before the defendant's decision not to promote the plaintiff. Id. at 545. Looking to the entire record in the light most favorable to Plaintiff, the Court finds that she has presented sufficient facts to support an inference of national origin discrimination by Mr. Smith.

Because the other elements of Plaintiff's prima facie case are not in dispute, the burden of production shifts to Defendant to articulate a legitimate reason for terminating Plaintiff. Defendant has met this burden by presenting evidence that it terminated Plaintiff due to her low performance rating, and that Plaintiff's low performance rating was due to Mr. Smith's determination that her demonstrated skills "do not measure up to [her] job description." (Doc.

9

No. 41 ¶¶ 22, 32-37.) Thus, the Court must next determine whether Plaintiff can establish pretext with respect to her national origin claim in response to Defendant's articulated reasons for both her termination and her performance rating.

### 2. Pretext

To establish pretext, Plaintiff must either: (1) identify evidence that would allow a reasonable factfinder to "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action;" or (2) cast sufficient doubt upon the legitimate reasons proffered by the defendant so that a reasonable factfinder could conclude that the reason was a post hoc fabrication or else did not actually motivate the employment action. Fuentes, 32 F.3d at 764. Defendant argues that Plaintiff has failed to present any evidence that could allow a factfinder to disbelieve Defendant's articulated reason for Plaintiff's termination due to her low performance rating. (Doc. No. 40 at 28.) However, Plaintiff need not cast doubt on the reasons proffered by Defendant if she is able to identify evidence that would allow a reasonable factfinder to believe that discrimination was more likely than not a motivating cause of Defendant's action.

Plaintiff's theory is not that the ultimate decision to terminate her was discriminatory; rather, her theory is that Mr. Smith's decision to give her a poor performance review was based on discriminatory animus. While Mr. Smith did not make the ultimate decision to terminate Plaintiff, Plaintiff has alleged sufficient facts to impute liability on Defendant for Mr. Smith's discriminatory animus under the cat's paw theory of liability. See infra Part III.A.3 (discussing the cat's paw theory). In support of her theory that her termination resulted from improper reasons, Plaintiff has presented an affidavit in which she swears that she met the criteria for a

higher performance rating. (Doc. No. 46-6.) While this self-serving affidavit is not sufficient to establish pretext alone, Plaintiff has also provided testimony that Mr. Smith teased her about her accent and made discriminatory comments about her national origin around the time that he gave her a poor performance evaluation, including calling her a "dumb Filipino." (Doc. No. 46-1 at 18-22.)

Plaintiff's allegations are more probative of a discriminatory motivation than the "stray remarks" in the cases upon which Defendant relies. For example, the alleged statement in Ezold that the plaintiff did not "fit the Wolf, Block mold since she was a woman, had not attended an Ivy League law school, and had not been on law review" was made five years before the defendant's decision not to promote the plaintiff. Ezold, 983 F.2d at 545. Also, the alleged comment that "Cubans are dumb" in Alvarez v. Royal Atl. Developers, Inc., which the United States Court of Appeals for the Eleventh Circuit held was not sufficient to establish pretext, was not made by a decision maker. 610 F.3d 1253, 1267-68 (11th Cir. 2010). In the instant matter, however, Mr. Smith was Plaintiff's direct supervisor. Further, around the same time that he called Plaintiff a "dumb Filipino," Mr. Smith gave Plaintiff a low performance evaluation that resulted in her termination. Thus, his statements are more probative than those of the non-decision maker in Alvarez or the partner in Ezold whose statement preceded the adverse employment action by five years.

While much of Plaintiff's evidence in support of a finding of pretext consists of her own testimony, "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990). Further, the Court recognizes that

"[d]iscriminatory conduct is often subtle and difficult to prove." Id. The Supreme Court has cautioned courts not to engage in credibility determinations at the summary judgment stage:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

Anderson, 477 U.S. at 255.  Thus, in the light most favorable to Plaintiff, the record is sufficient to allow a reasonable facfinder to believe that a discriminatory reason was more likely than not a motivating cause of Mr. Smith's poor evaluation of Plaintiff.  Therefore, Plaintiff has sufficiently established pretext with respect to her national origin claim to avoid summary judgment.

### 3.   Cat's Paw Theory

Furthermore, the Court finds that Plaintiff has produced sufficient evidence to impute liability on Defendant for Mr. Smith's alleged discriminatory animus under a cat's paw theory. The facts of record are sufficient to support a finding that Mr. Smith gave Plaintiff a poor evaluation intending to cause her termination due to her national origin, and that the evaluation was the proximate cause of her termination.  See Staub, 131 S.Ct. at 1194.  Facts of record would support a finding that Mr. Smith knew about the reduction in force criteria at the time that he gave Plaintiff a poor evaluation.  Specifically, Plaintiff presented a memo written by Mr. Smith in which he stated that in making a recommendation for reduction in force he must consider whether an employee has had disciplinary action or a performance rating of one.  (Doc. No. 46-12.)  While this evidence is subject to different interpretations, the Court must view the evidence in the light most favorable to Plaintiff.  Plaintiff also presented testimony from employees at the plant that "everybody knows that" a performance rating of one would result in termination in the

event of a reduction in force, and that the criteria was presented in an employee handbook. (Doc. No. 46-5 at 7; Doc. No. 46-3 at 8; Doc. No. 46-4 at 13.)  Thus, a reasonable jury could find that Mr. Smith gave Plaintiff a performance rating of one, intending and knowing that she would be terminated as a result.  Accordingly, the Court finds that Plaintiff has alleged sufficient facts to overcome Defendant's motion for summary judgment on her Title VII and PHRA claims of national origin discrimination.

   **B.**  **Gender Discrimination**

Next, Defendant argues that Plaintiff cannot show that she was terminated due to her gender.  (Doc. No. 40 at 34.)  The Court's analysis with respect to Plaintiff's gender discrimination claim is nearly identical to the Court's discussion of Plaintiff' national origin discrimination claim.  Plaintiff has testified that Mr. Smith made derogatory comments about females, specifically stating that "no female should be running [the] machine" on which she worked.  (Doc. No. 46-1 at 20.)  Plaintiff also testified that Mr. Smith demeaned women and treated them differently than men.  (Id. at 10-17.)  As with Mr. Smith's alleged derogatory comments about Plaintiff's national origin, Defendant argues that Mr. Smith's statement about Plaintiff's gender is the type of isolated comment that cannot demonstrate an inference of discrimination in Plaintiff's prima facie case, or establish pretext upon Defendant's showing of a legitimate reason for its actions.  (Doc. No. 40 at 35.)  However, Plaintiff's statement is sufficient to support an inference that he gave Plaintiff a poor performance review because he felt that females should not be operating the machinery that she was operating.

Further, coupled with Plaintiff's testimony that she performed her job duties satisfactorily, Mr. Smith's allegedly discriminatory statements are also sufficient to support a

finding that Mr. Smith's animus towards females was the real reason that he gave her a poor evaluation. Defendant argues that Plaintiff's case of gender discrimination is weakened by the fact that he gave other women favorable performance evaluations, and by the fact that he gave a male employee a performance score of one. (Id. at 36.) However, these are considerations for a jury and are not dispositive of Plaintiff's claim of gender discrimination. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000) ("Clearly, an employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class.").

Finally, Mr. Smith's alleged animus towards females can be imputed to Defendant under the cat's paw theory of liability for the same reasons discussed with respect to Plaintiff's gender discrimination claim. Accordingly, the Court will deny Defendant's motion for summary judgment with respect to Plaintiff's gender discrimination claims under Title VII and PHRA.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion for summary judgment. Plaintiff has presented sufficient facts to support a finding that her termination resulted from Mr. Smith's discriminatory animus towards females and Filipinos. Thus, resolution of Plaintiff's claims must be presented to a jury.

An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMMA MILLER,** | : | |
|     **Plaintiff** | : | No. 1:10-cv-2479 |
| | : | |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **TYCO ELECTRONICS, LTD.,** | : | |
|     **Defendant** | : | |

**ORDER**

    **AND NOW**, on this 18th day of September 2012, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion for summary judgment (Doc. No. 39) is **DENIED**.

    The Pre-Trial Conference is rescheduled to October 17, 2012, at 1:30 p.m. in the chambers of Courtroom No. 4.

    S/ Yvette Kane
    Chief Judge Yvette Kane
    United States District Court
    Middle District of Pennsylvania