IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMA MILLER, | : | |
|     Plaintiff | : | No. 1:10-cv-2479 |
| | : | |
| v. | : | |
| | : | (Chief Judge Kane) |
| TYCO ELECTRONICS, LTD., | : | |
|     Defendant | : | |

**MEMORANDUM ORDER**

Before the Court are seven motions in limine: two filed by Plaintiff Emma Miller (Doc. Nos. 55, 57), and five filed by Defendant Tyco Electronics (Doc. Nos. 59-63). The motions are ripe for disposition.

**I.  BACKGROUND**

Plaintiff worked in various manufacturing and assembly capacities on production lines while employed by Defendant Tyco from 1999 until she was terminated in March 2009. In 2007, Plaintiff was transferred from a plant in East Berlin, Pennsylvania to a plant in Harrisburg. In November 2008, Plaintiff's new supervisor James Smith gave Plaintiff a poor performance evaluation, noting that her skills did not measure up to the descriptions of her job classification. Plaintiff complained to Tyco's human resources department, asserting that Mr. Smith discriminated against her and harassed her because of her gender and national origin. Tyco's human resources department determined that she did not suffer any unlawful discrimination. When Tyco engaged in a reduction in force in March 2009, Plaintiff was formulaically chosen for layoff because she had previously received a poor performance evaluation.

Plaintiff initiated this action by filing a complaint on December 3, 2010, alleging that she was terminated from her position at Tyco for improper reasons. (Doc. No. 1.) At the time that

1

she filed her complaint, Plaintiff's discrimination claim with the Pennsylvania Human Relations Commission (PHRC) was still pending. (Id. ¶ 10.) On December 14, 2010, the PHRC informed Plaintiff of its finding that the evidence supporting her claims was not sufficient to show an unlawful act of discrimination. Plaintiff filed an amended complaint against Tyco on January 17, 2012, raising claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act (PHRA), alleging that she was terminated based on, inter alia, her gender, national origin, and race. (Doc. No. 4.) Specifically, Plaintiff asserts that Mr. Smith gave her a poor performance evaluation so that she would be laid off, and that his discriminatory animus toward her gender and national origin were motivating factors in his decision to give her a poor performance evaluation. In support, Plaintiff claims that Mr. Smith told her that no woman should be doing the type of work that she was performing, screamed at her for wearing jewelry, called her dumb, tried to flick her in the head, laughed at her Filipino accent, and called her a "dumb Filipino."

On November 23, 2011, the Court denied Defendant's first motion for summary judgment, in which Defendant argued that Plaintiff had waived her right to file the instant suit by agreeing to a release of her workers' compensation claim against Tyco. (Doc. No. 29.) The Court found that a handwritten amendment to the release may have preserved Plaintiff's discrimination claims. (Id.) On July 11, 2012, Plaintiff filed a stipulation amending her complaint, dropping all of her claims except for a Title VII claim and a PHRA claim based on gender and national origin. (Doc. No. 36.) Following discovery, Defendant filed a second motion for summary judgment, arguing that Plaintiff failed to present sufficient evidence to support her discrimination claims. (Doc. No. 39.) On September 18, 2012, the Court denied

Defendant's second motion for summary judgment, finding that she presented sufficient evidence to support a finding of discrimination by Mr. Smith. (Doc. No. 54.)

## II. PLAINTIFF'S MOTIONS

Plaintiff filed two motions in limine: first, Plaintiff seeks to preclude any documents and evidence pertaining to the Pennsylvania Human Relations Commission's (PHRC) finding of no probable cause on Plaintiff's charge of discrimination (Doc. No. 57); second, Plaintiff seeks to preclude evidence related to her workers' compensation settlement proceeds (Doc. No. 55). For the reasons that follow, the Court will grant the first motion, and deny the second motion.

### A. The PHRC's Findings

First, Plaintiff moves to preclude Defendant from presenting the PHRC's findings and the letter advising the parties that the PHRC found no probable cause on Plaintiff's charge of discrimination. (Doc. No. 57.) Specifically, Plaintiff argues that the evidence should be excluded pursuant to Rule 403 of the Federal Rules of Evidence. (Doc. No. 58.)

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible." Fed. R. Evid. 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The United States Court of Appeals for the Third Circuit has explained that "the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1345 (3d Cir. 2002).

Logically, this holding applies with equal force to findings of the PHRC, which is the state analogue to the EEOC.

Defendant argues that the probative value of the PHRC findings outweigh any concerns that the evidence will be given any undue weight. (Doc. No. 89.) Defendant also argues that the PHRC's findings are relevant with respect to Plaintiff's prayer for punitive damages as the evidence rebuts any claim that Defendant had malicious intent. (Id. at 5-6.) While the PHRC's findings of no probable cause are relevant, the evidence creates an undue risk of prejudice and delay. The PHRC's findings are not binding on the jury, and Defendant will be able to present the evidence at trial that supported the PHRC's findings. Therefore, Defendant will not be prejudiced by the exclusion of this evidence. Conversely, Plaintiff is likely to be unfairly prejudiced by the evidence that a governmental body found that there was no probable cause of her charges of discrimination. Whether Plaintiff suffered unlawful discrimination and whether Plaintiff is entitled to punitive damages are issues within the province of the jury, not the PHRC. Moreover, presentation of the PHRC's findings would create an undue delay at trial and confuse the issues. See Sarin v. Poojan, Inc., No. 3:08-cv-1077, 2010 WL 5463250, at *6 (M.D. Pa. Dec. 29, 2010) (granting defendant's motion in limine, finding that the PHRC's findings of probable cause were unduly prejudicial to the defendant and would needlessly waste time); Supinski v. UPS, No. 3:06-cv-793, 2012 WL 2905381, at *9 (M.D. Pa. July 16, 2012) (denying motion for new trial, noting that "PHRC findings were excluded because of fear that a jury would give undue weight to the decisions of a government agency"); Cambra v. Rest. Sch., No. Civ. A 04-2688, 2005 WL 2886220, at *5 (E.D. Pa. Nov. 2, 2005) (excluding EEOC letter as cumulative and likely to confuse and mislead the jury).

Thus, the Court will grant Plaintiff's motion to preclude evidence related to the PHRC's findings of no probable cause.

B.     **Plaintiff's Workers' Compensation Settlement**

In Plaintiff's second motion in limine, she argues that the Court should preclude Defendant from arguing that her workers' compensation settlement proceeds should be offset against any potential lost wages awarded to her discrimination action. (Doc. No. 55.) Specifically, Plaintiff asserts that Title VII and the PHRA do not specifically allow an offset for payment of workers' compensation benefits, and the collateral benefit rule prohibits Defendant from offsetting its liability. (Doc. No. 56 at 3-4.) Moreover, Plaintiff asserts that while other district courts in the Third Circuit have deducted workers' compensation benefits from back pay, those cases involved weekly wage loss benefits, unlike the lump sum awarded by Defendant in this case.

If Plaintiff prevails on her Title VII or PHRA claims, she may be entitled to equitable remedies such as back pay and front pay. 42 U.S.C. § 2000e-5(g). The purpose of equitable damages under Title VII are to make the plaintiff "whole for injuries suffered on account of unlawful employment discrimination." Eshelman v. Agere Sys., Inc., 554 F.3d 426, 440 (3d Cir. 2009). Back pay is calculated by subtracting the actual wages earned by the plaintiff from the amount that the plaintiff would have earned but for the unlawful discrimination. Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1119 (3d Cir. 1988). While back pay awards are not reduced by the amount of unemployment or social security benefits received by the plaintiff from a collateral source, workers' compensation benefits should be deducted from an award of back pay because those benefits are paid by the employer rather than a collateral source. McKenna v. City of

5

Philadelphia, 636 F. Supp. 2d 446, 457-58 (E.D. Pa. 2009) (citing Maxfield v. Sinclair Int'l, 766 F.2d 788 (3d Cir. 1985); Craig v. Y & Y Snacks, Inc., 721 F.2d 77 (3d Cir. 1983)).  However, amounts paid to a plaintiff's lawyer in connection with a workers' compensation claim should be excluded from the calculation for purposes of computing the equitable damages, as those amounts are not retained by the plaintiff.  Id. (noting Title VII's purpose "to make persons whole for injuries suffered on account of unlawful employment discrimination") (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-17 (1975)).

Plaintiff asserts that, despite the fact that several district courts within the Third Circuit have deducted workers' compensation benefits from back pay, her award was a lump sum payment rather than a weekly wage loss benefit and thus should not be deducted.  (Doc. No. 56 at 4.)  Plaintiff further avers that the settlement agreement does not apportion the $82,500.00 settlement between wage loss benefits and payment of medical treatment.  However, the compromise and release agreement provides that the sum of $82,500.00 represents all future medical, wage, and disfigurement claims, noting that Plaintiff's attorney received $16,500.00 in attorney's fees.  (Doc. No. 56-1 at 7.)  To the extent that Plaintiff wishes to present evidence that some portion of the settlement amount should be apportioned to medical or other expenses rather than wages, she is not precluded from doing so.  However, the fact that Defendant paid Plaintiff a lump sum payment rather than a weekly wage payment to settle Plaintiff's workers' compensation claim does not preclude consideration of the settlement for purposes of calculating the equitable remedies of back pay and front pay.  Thus, the Court will deny Plaintiff's second motion in limine.

## III.     DEFENDANT'S MOTIONS

Defendant filed five motions, seeking to preclude the following evidence: (1) notes created by Plaintiff after she made an internal complaint (Doc. No. 59); (2) a note created by Anna Harmon (Doc. No. 60); (3) notes prepared by Tyco's human resource department (Doc. No. 61); (4) testimony of current and former employees who have no personal knowledge (Doc. No. 62); and (5) text messages sent by Dave Nonnemocher (Doc. No. 63). The Court will address each motion in turn.

### A. Plaintiff's Notes

First, Defendant argues that the Court should preclude admission of Plaintiff's diary, which is a series of dated notes rather than a personal diary. (Doc. No. 59.) Plaintiff's notes generally contain accounts of conversations that she had with others. (Doc. No. 59-5.) It is not clear how these notes are relevant to her claims in this case; none of the notes appear to reference discrimination. However, regardless of whether they are relevant, these statements are inadmissible hearsay statements. Rule 801(c) of the Federal Rules of Evidence provides that hearsay is "a statement that the declarant does not make while testifying at trial or hearing . . . offer[ed] in evidence to prove the truth of the matter asserted in the statement." Rule 802 of the Federal Rules of Evidence provides that hearsay statements are not admissible. Each of the statements in Plaintiff's diary were made by her outside of court, and Plaintiff is offering the statements to prove the truth of the matters asserted therein. Moreover, Plaintiff conceded that the notes are inadmissible hearsay. (Doc. No. 84.) Plaintiff expressed, however, that the notes may be necessary in trial to refresh her recollection at trial. (Id.) The Court will defer ruling on the use of documents to refresh a witness's memory until trial.

Thus, the Court will grant Defendant's first motion in limine and will preclude Plaintiff

from admitting her notes into evidence.

B. **Anna Harmon's Note**

Second, Defendant moves to exclude a note written by Plaintiff's colleague, Anna Harmon. (Doc. No. 60.) Defendant argues that the note is not relevant, is an inadmissible lay opinion, and is hearsay. The note at issue contains the telephone number for a concern hotline, and what appears to be a summary of complaints that Plaintiff could make. (Doc. No. 60-5 at 5.) For example, the note contains statements such as: "gave full time woman 1 on PBR [and] held ur bonus," "you were not and still aren't getting trained," "day shift one sleeps [and] is only told about it." (Id.) As with her own notes, Plaintiff conceded that Anna Harmon's note is inadmissible hearsay, but that she may need the note to refresh Ms. Harmon's memory at trial. (Doc. No. 85.) Thus, the Court will grant Defendant's second motion in limine, precluding admission of Anna Harmon's note into evidence, and will defer ruling on whether the document may be used to refresh Ms. Harmon's memory until trial.

C. **Tyco's Human Resource Department Notes**

Third, Defendant seeks to preclude Plaintiff from presenting the handwritten and typed notes prepared by LuAnn Line, a Tyco human resource advisor. (Doc. No. 61.) The notes contain summaries of statements by Tyco employees regarding Tyco's internal investigation into Plaintiff's allegations of discrimination. The statements tend to show that some Tyco employees believed that Mr. Smith treated women differently than men. Defendants assert that the notes are inadmissible hearsay.

Rule 803(6) of the Federal Rules of Evidence provides an exception to the general rule against admitting hearsay statements. Under Rule 803(6), generally referred to as the business

records exception, business records are admissible if: (1) the declarant had personal knowledge; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made a record in the regular course of the business activity; and (4) the records were regularly kept by the business. United States v. Pelullo, 964 F.2d 193, 200 (3d Cir. 1992). Some portions of Ms. Line's notes may satisfy the business records exception, such as her personal observations that she contemporaneously recorded. Thus, the Court will give Plaintiff an opportunity at trial to call Ms. Line to lay the foundation for the business records exception, and will thus defer ruling on Defendant's third motion in limine at this stage, to the extent that Defendants seek to exclude Ms. Line's personal observations and notes rather than the statements of others contained within her notes.

While Ms. Line's independent observations may be admissible under the hearsay rule, her notes contain statements of other Tyco employees, and "[e]ach level of the business record must satisfy the hearsay rule." Coyle v. Kristjan Palusalu Maritime Co., Ltd., 83 F. Supp. 2d 535, 544 (E.D. Pa. 2000). Plaintiff asserts that the statements from employees are admissible because they will not be offered to prove the truth of the matter asserted. Instead, Plaintiff asserts that the statements are admissible to show the Defendant's state of mind concerning why it rejected this evidence in concluding that she had not suffered illegal discrimination. (Doc. No. 86 at 2.) The Court agrees that the statements may be admissible to support an argument that she was not afforded a fair review of her complaint and was somehow treated unfairly, as opposed to proving the truth of the matters asserted therein.

Thus, the Court will defer ruling on Defendant's third motion in limine, so that Plaintiff may attempt to lay the foundation for the business records exception to the rule against hearsay.

9

### D. Testimony of Witnesses

In Defendant's fourth motion in limine, Defendant seeks to bar the testimony of current and former Tyco employees who have no personal knowledge of the facts at issue in this case. (Doc. No. 62.) Specifically, Defendant seeks to bar testimony from Pam Repress, Sheila Napitonia, Peggy Shotzberger, Anna Harmon, George Munn, and Linda Packard. Rule 602 of the Federal Rules of Evidence provides that a witness may testify only to a matter of which the witness has personal knowledge. Defendant argues that each of these witnesses will testify about matters to which they have no personal knowledge, in the form of speculation or opinion.

In response, Plaintiff agreed not to call Sheila Napitonia, but described the testimony that each of these witnesses would provide if called at trial. (Doc. No. 88.) The Court will separately discuss the proffered testimony of each of these witnesses, and will deny Defendant's motion for the reasons that follow.

First, Plaintiff asserts that she will call Pam Repress as a damage witness regarding the emotional distress that she suffered because of Defendant's discrimination. The Court will permit Plaintiff to call Ms. Repress for such a purpose. Ms. Repress may testify about matters to which she has personal knowledge, including her observations about Plaintiff and Plaintiff's emotional state of mind.

Next, Plaintiff also expressed her intent to call George Munn as a damage witness, asserting that he was her boyfriend and will testify as to her demeanor and emotional distress. The Court is satisfied with the proffered testimony that Plaintiff has provided, and will permit Mr. Munn to testify.

Third, Plaintiff asserts that Anna Harmon will testify about operating the multi-gig machine that Plaintiff operated, will testify about the assistance that operators on her shift received with respect to the multi-gig machine, and may testify that Plaintiff once complained to her that Smith called her a "dumb Filipino" in order to rehabilitate Plaintiff if Defendant argues that Plaintiff fabricated that statement. Finding that some of the proffered testimony may be admissible, the Court will permit Ms. Harmon to testify.

Fourth, Plaintiff asserts that Peggy Shotzberger will testify about the work environment at Plaintiff's workplace, particularly with respect to how women were treated at the plant. The Court will permit Ms. Shotzberger to testify.

Fifth, Plaintiff asserts that Linda Packard will testify that Smith picked on Linda Palumbo. Plaintiff argues that this testimony will be probative of the discriminatory attitude that Smith cultivated at Plaintiff's workplace. The Court agrees that this evidence may be relevant, and will permit Ms. Packard to testify at trial.

With respect to each of the above-mentioned witnesses, Plaintiff has proffered some admissible testimony. Thus, the Court will permit her to call these witnesses. However, the Court will reserve ruling on whether each of the proffered statements are admissible. The relevance, probative value, and cumulative nature of the evidence may become apparent at trial.

### E. Text Messages from Nonnemocher

In its fifth motion in limine, Defendant seeks to preclude the admission of text messages sent by one of Plaintiff's former colleagues, David Nonnemocher. (Doc. No. 63.) These text messages consist of observations and opinions by Mr. Nonnemocher. (Doc. No. 63-5 at 5.) For example, in the messages, Mr. Nonnemocher opines that Mr. Smith has no respect for her, and

11

may have been setting her up for a layoff. Plaintiff has failed to demonstrate that these statements are relevant. Mr. Nonnemocher's opinions are merely speculation and have no tendency to make any of the facts of consequence more or less likely. See Fed. R. Evid. 401. Moreover, to the extent that Plaintiff seeks to admit these text messages to prove the truth of the matters asserted therein, these out of court statements are inadmissible as hearsay. See Fed. R. Evid. 801, 802. Additionally, Mr. Nonnemocher's proffered testimony that he believes Smith was "setting [Plaintiff] up to be placed on the layoff list" and his other opinions are inadmissible lay opinions that are not based on his own perception and would not be helpful to understand his testimony or determine a fact in issue. See Fed. R. Evid. 701. Evaluation of evidence, drawing of inferences, and credibility determinations are within the province of the jury; not Plaintiff's past co-workers. Thus, the Court will not permit Plaintiff to present Mr. Nonnemocher's text messages as evidence at trial. The Court will, however, reserve ruling on whether the text messages may be used to refresh Mr. Nonnemocher's memory at trial.

## IV. CONCLUSION

**ACCORDINGLY**, on this 14th day of November 2012, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's motion to preclude any documents and evidence pertaining to the PHRC's finding of no probable cause on Plaintiff's charge of discrimination (Doc. No. 57) is **GRANTED**;

2. Plaintiff's motion to preclude evidence related to her workers' compensation settlement proceeds (Doc. No. 55) is **DENIED**;

3. Defendant's motion to exclude notes created by Plaintiff after she made an internal complaint (Doc. No. 59) is **GRANTED**;

4. Defendant's motion to exclude a note created by Anna Harmon (Doc. No. 60) is

**GRANTED**;

5. The Court will **RESERVE RULING** on Defendant's motion to exclude notes prepared by Tyco's human resource department (Doc. No. 61);

6. Defendant's motion to exclude current and former employees who have no personal knowledge as witnesses (Doc. No. 62) is **DENIED**; and

7. Defendant's motion to exclude text messages sent by Dave Nonnemocher (Doc. No. 63) is **GRANTED**.

                        S/ Yvette Kane
                        Yvette Kane, Chief Judge
                        United States District Court
                        Middle District of Pennsylvania